IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH



| | |
|---|---|
| DANIEL SCHULOF, ▉ ▉<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, D.C. 20201<br><br>Defendant. | Case: 2:19-cv-00562<br>Assigned To : Waddoups, Clark<br>Assign. Date : 08/09/2019<br>Description: Schulof v. Department of Health and Human Service |

### COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief and seeking the disclosure of agency records improperly withheld by Defendant the United States Department of Health and Human Services ("HHS") and its subordinate entities from Plaintiff Daniel Schulof.

### Jurisdiction and Venue

2. The Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

### Parties

4. Plaintiff is a United States citizen residing in the District of Utah at 181 Edith Avenue, Salt Lake City, UT 84111. He is a representative of the news media, having been

decade. These ingredients are commonly used as a source of starch in "grain-free" pet foods, which make up a large and popular subsector of the overall pet food market. According to the Dog and Cat Food Ingredient Center, approximately 44% of all dry dog foods sold in the United States in 2016 were grain-free and 66% of dry dog foods sold in the United States contained either peas, lentils, other legumes, or potatoes. (*See https://www.petfoodindustry.com/articles/7494-usage-rates-of-dog-food-ingredients-in-fda-dcm-warning.*)

9. On July 12, 2018, the FDA's Center for Veterinary Medicine issued an online press release providing as follows:

> The U.S. Food and Drug Administration is alerting pet owners and veterinary professionals about reports of canine dilated cardiomyopathy (DCM) in dogs eating certain pet foods containing peas, lentils, and other legume seeds, or potatoes as main ingredients. These reports are unusual because DCM is occurring in breeds not typically genetically prone to the disease. The FDA's Center for Veterinary Medicine and the Veterinary Laboratory Investigation and Response Network, a collaboration of government and veterinary diagnostic laboratories, are investigating this potential association.

(*See https://www.fda.gov/AnimalVeterinary/NewsEvents/CVMUpdates/ucm613305.htm.*)

10. This announcement received widespread national media coverage, usually under alarming headlines. For instance, the *New York Times* published an article entitled "Popular Grain Free Pet Foods May Be Linked With Heart Disease" and *Slate.com* published another entitled "Please Stop Buying Your Pets Grain-Free Food." (*See https://www.nytimes.com/2018/07/24/health/grain-free-dog-food-heart-disease.html, https://slate.com/technology/2019/01/stop-buying-grain-free-food-for-your-pets.html.*)

11. On February 19, 2019, the FDA issued a public update on the investigation, noting that only 273 cases of canine DCM had been reported nationwide since its original announcement. In its update, the FDA also highlighted the key role that a few specific veterinary researchers were playing in perpetuating the investigation:

> FDA veterinarians have been working with the veterinary community to exchange information about existing cases and the type of clinical information that is most helpful to the investigation. We are also consulting with a cadre of board-certified veterinary cardiologists and nutritionists to learn more about the presentation of these cases and how they respond to treatment.
>
> ...
>
> FDA veterinarians have been working with Drs. Lisa Freeman of Tufts University, Joshua Stern of UC Davis, and Darcy Adin of the University of Florida to learn more about their research findings and the cases they've encountered.

(*See* https://www.fda.gov/AnimalVeterinary/NewsEvents/CVMUpdates/ucm630991.htm.)

12. Although they are all employees of research universities, these same three veterinary researchers have significant financial ties to one or more of three of the largest pet food companies in the world, Nestlé-Purina Petcare ("Purina"), Hill's Pet Nutrition ("Hill's"), and Mars Petcare ("Mars"). In recent academic publications, Dr. Freeman has had to disclose financial conflicts of interest with each of Hill's, Purina, and Mars and Dr. Adin has had to disclose financial conflicts of interest with Purina. (*See* https://avmajournals.avma.org/doi/full/10.2460/javma.253.11.1390.) Although Dr. Stern has not disclosed financial conflicts of interest in his recent publications, information produced to Plaintiff pursuant to the California Public Records Act shows that the research institution where he is employed (the veterinary school at the University of California at Davis) has received hundreds of thousands of dollars in funding from the three companies since January of 2017.

13. Collectively, these "Big Three" companies represent nearly *half* of the entire U.S. pet food market. (According to Euromonitor International, an industry analyst, the Big Three were responsible for more than 46% of the pet food sold in the United States in 2017.) The great majority of their products share a single quality in common: grain ingredients such as corn, rice, and wheat flour supply the starch content, instead of the peas, lentils, and potatoes that are more often used

in grain-free recipes. Indeed, according to "Taurine + DCM," a website devoted to raising awareness about the FDA's DCM investigation, pet-owners concerned about canine DCM should *only* choose foods produced by one of three companies: Hill's, Purina, and Mars. (*See* https://taurinedcm.org/taurine-dcm-faq/.) In other words, **the Big Three have a massive profit motivation to drive pet food consumers away from grain-free pet foods featuring peas, lentils, other legumes, or potatoes.**

14. In the months since the FDA announced its investigation, Drs. Freeman, Stern, and Adin have all authored or co-authored articles about canine DCM. These articles have been published in both scholarly journals and online blogs. Most of these articles reference (1) a recent "spike" in canine DCM cases and (2) an "apparent association" between canine DCM and grain-free pet foods. But, critically, none of these articles cites any peer-reviewed evidence that canine DCM has become more common in recent years and none of them cites any peer-reviewed evidence showing grain-free pet foods present a higher risk of DCM than grain-containing ones. *To date, there is no published, peer-reviewed evidence of either of these phenomena.*

15. Nevertheless, the public has seized on these articles and the media attention generated by the FDA's investigation as a reason to avoid or abandon grain-free pet foods. For instance, although *fewer than 300 cases* of canine DCM had been reported to the FDA as of February 19, 2019, a Facebook group called "Taurine-Deficient (Nutritional) Dilated Cardiomyopathy" presently has *more than 60,000 members*. (*See* https://www.facebook.com/groups/TaurineDCM/.)

### Administrative History of Plaintiff's FOIA Request

16. As the national media attention generated by the FDA's investigation demonstrates, the pet-owning public has a keen interest in understanding whether certain pet foods carry a greater

risk of DCM than others. As such, the public has an interest in understanding the extent to which the FDA's investigation has been improperly influenced by profit-driven corporations. The mere existence of financial threads tying the FDA's DCM investigation to three of the world's largest and most influential pet food companies is not definitive evidence of wrongdoing. But, as documented in Plaintiff's 2016 book, *Dogs, Dog Food, and Dogma*, such influence-peddling would be consistent with a broader pattern of behavior that these companies have exhibited over the last few decades.

17. As a member of the news media covering the pet food industry, Plaintiff recognized the public's interest in understanding the nature of the Big Three's involvement in the FDA's DCM investigation. As part of an effort to research potential articles and/or books about the matter, he filed a FOIA request with the FDA's FOIA Officer on February 21, 2019, seeking access to and copies of a variety of records associated with the investigation.

18. On March 5, 2019, Defendant denied Plaintiff's FOIA request in full, citing 5 U.S.C. § 552 (b)7(A), the "law enforcement proceedings" exemption and designating Plaintiff's request as Request Number 2019-1704.

19. On March 19, 2019, Plaintiff lodged an administrative appeal of the denial with Defendant's Chief FOIA Officer, explaining that the denial was improper because the FDA's DCM investigation is an open scientific inquiry, not a "law enforcement proceeding" under § (b)(7)(A).

20. To date, Plaintiff has received no substantive response to his administrative appeal.

## COUNT ONE

21. Plaintiff repeats and re-alleges paragraphs 6 through 20 above, including all exhibits referenced therein.

22.     Plaintiff's FOIA Request No. 2019-1704 was improperly denied in full by the Defendant.

23.     By letter dated March 19, 2019, Plaintiff submitted an administrative appeal of the improper denial, challenging Defendant's substantive response.

24.     To date, Plaintiff has received no substantive response to his appeal. Plaintiff has therefore constructively exhausted all required administrative remedies.

WHEREFORE, Plaintiff prays that this Court:

(1)     Order Defendant to produce to Plaintiff all responsive, non-exempt agency records;

(2)     Award Plaintiff reasonable costs as provided in 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d);

(3)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(4)     Grant such other relief as the Court may deem just and proper.

Date:   July 29, 2019

                                  Respectfully submitted,

                                  /s/ Daniel Schulof
                                  Daniel Schulof
                                  181 Edith Avenue
                                  Salt Lake City, UT 84111
                                  (404) 840-0383
                                  danielschulof@gmail.com

                                  *Pro se litigant*

                                  [signature]
                                  8/9/19